UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |  |
|---|---|---|
| MICHAEL GLEN POWERS, III, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:22-CV-124-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ATLAS USED CARS, INC., *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Two motions are presently before the Court. First, Defendant Louisville Recovery Service, LLC ("LRS") filed a Motion for Summary Judgment. [R. 46]. Plaintiff Michael Glen Powers, III, then filed a Response and Cross-Motion for Summary Judgment. [R. 47]; [R. 48].[1] LRS responded to Powers's Cross-Motion [R. 50], and Powers replied [R. 52]. For the reasons that follow, the Court will deny both motions.

## I.   BACKGROUND

Defendant LRS is a debt collector. [R. 1-3, Ex. B (State Complaint), ¶ 9]. This action arises out of LRS's reporting and attempted collection of unpaid medical debts incurred by Plaintiff Powers at Hardin Memorial Hospital in Elizabethtown, Kentucky. *Id.* at ¶¶ 68–70. According to the hospital's records, Powers was seen in the emergency room on December 14, 2017, and has an outstanding balance of $114.75 associated with that visit (hereinafter referred to as "LRS Account Number 412699"); he was seen again on February 8, 2018, and has an outstanding balance of $56.97 for that visit ("LRS Account Number 414320"); on December 20, 2018, with an

---

[1] The Court notes that Powers's response at docket entry R. 47 is a duplicate copy of his cross-motion at docket entry 48. For clarity, the Court will, throughout this order, refer only to docket entry 48.

outstanding balance of $275 for that visit ("LRS Account Number 435663"); on January 2, 2019, with an outstanding balance of $510 for that visit ("LRS Account Number 436667"); on January 23, 2019, with an outstanding balance of $510 for that visit ("LRS Account Number 436732"); on September 22, 2019, with an outstanding balance of $765 for that visit ("LRS Account Number 450275"); and finally, on February 23, 2020, with an outstanding balance of $345.60 for that visit ("LRS Account Number 459940"). [R. 46-2, Ex. 1 (Elizabethtown Emergency Records), pp. 1–13]; *see also* [R. 46-1, p. 3]; [R. 1-3, Ex. B (State Complaint), ¶ 68]. When Powers failed to pay these debts, each was referred to LRS pursuant to a Collections Services Agreement with Elizabethtown Emergency Physicians, LLC. *See generally* [R. 46-4, Ex. 3].

LRS acknowledges that on January 27, 2020, Powers disputed LRS Account Number 436667, the $510.00 debt associated with his January 2, 2019, emergency room visit directly to LRS. [R. 46-1, p. 4]; [R. 46-5, Ex. 4 (Powers's LRS Account History), p. 7]. LRS also admits that on December 16, 2020, it "received notice" that Powers disputed LRS Account Number 436736, the $510.00 debt associated with his January 23, 2019, emergency room visit. [R. 46-1, p. 4]; [R. 46-5, Ex. 4 (Powers's LRS Account History), p. 13]. On May 17, 2021, Powers obtained a copy of his credit report and, consistent with LRS's acknowledgements, both disputes showed up as reported. [R. 48-1, pp 3–8]. According to Powers's Complaint, however, he disclaims responsibility for all seven emergency room visits, and he formally disputed all seven debts in a letter to Trans Union, LLC dated August 14, 2021. [R. 1-3, Ex. B (State Complaint), ¶¶ 71, 72]; *see also* [R. 46-9 (Letter and Certified Mail Receipt), pp. 1–3].

Powers contends that, consistent with its obligations under 15 U.S.C. § 1681i, Trans Union notified LRS of all seven disputes. *Id.* at ¶¶ 73, 74. But LRS attests it never received notice of Powers's August 14, 2021 dispute letter, either from Trans Union or from Powers directly. [R. 7

(LRS Answer), ¶¶ 19, 20]; [R. 46-1, p. 5]. LRS explains that Powers's account history, which "is created contemporaneously and cannot be altered or edited after the fact," shows no activity between May 7, 2021, through February 22, 2022, and reflects only the January 27, 2020 (LRS Account Number 436667), and the December 16, 2020 (LRS Account Number 436732) disputes. *Id.*; [R. 46-5, Ex. 4 (Powers's LRS Account History), pp. 1–15]. LRS's CEO, Cynthia Habeeb, further affirms that LRS never received notice of Powers's disputes. [R. 46-6, Ex. 5 (Affidavit of Cynthia Habeeb), ¶¶ 2, 10].

On September 25, 2021, after sending the letter formally disputing the medical debts to Trans Union, Powers obtained a second copy of his Trans Union credit report, which still reflected only that the two $510.000 debts from January 2, 2019, and January 23, 2019 (LRS Account Numbers 436667 and 436732), had been disputed. [R. 1-3, Ex. B (State Complaint), ¶¶ 76–78]. The remaining five debts from Elizabethtown Emergency Physicians continued to show up on Powers's credit report as undisputed. *Id.* at ¶ 79. Consequently, on February 18, 2022, Powers brought this action in Hardin County Circuit Court against numerous Defendants, including LRS and Trans Union. *See generally* [R. 1-3 (State Complaint)]. With respect to LRS, Powers asserts a single claim for violation of the Fair Debt Collection Practices Act (FDCPA), contending LRS furnished false credit information to Trans Union, a credit reporting agency, when it failed to denote Powers's disputes of five of the seven medical debts. *Id.* at ¶ 80.

On March 1, 2022, Defendant Trans Union timely removed the action to this Court. [R. 1 (Notice of Removal)]. The parties exchanged discovery, and on April 27, 2023, LRS filed its Motion for Summary Judgment. [R. 46]. On May 12, 2023, Powers responded and filed his Cross-Motion. [R. 48]. Both motions are ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates,* 578 F.3d 407, 414 (6th Cir. 2009). The court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986).

The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

The same standards apply when parties file cross-motions for summary judgment, *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (citing *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)), and cross-motions do not require the Court to grant summary judgment for one side or the other. *Walters v. Gill Indus., Inc.*, No. CV 5:21-069-DCR, 2022 WL 507656, at *4 (E.D. Ky. Feb. 18, 2022). Rather, "the Court evaluates each party's motion on its own merits, drawing all reasonable inferences against the party whose motion is under consideration." *Id.*

## III.   ANALYSIS

As stated, Powers has brought only one claim against LRS for violations of the FDCPA, 15 U.S.C. § 1692 *et seq*. Powers alleges that LRS violated the FDCPA by "furnishing false credit information to Trans Union about Mr. Powers and the LRS Tradelines . . . without noting the fact of Mr. Powers' dispute as to [] five LRS Tradelines," which "created a material risk of harm to the interests recognized by Congress in enacting the FDCPA." [R. 1-3 (State Complaint), ¶¶ 119–20].

"The FDCPA prohibits any debt collector from using 'false representation[s] or deceptive means' to collect a debt, including by '[c]ommunicating, or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.'" *Foster v. AFNI, Inc.*, No. 2:18-CV-12340-TGB, 2020 WL 1531651, at *5 (E.D. Mich. Mar. 31, 2020) (quoting 15 U.S.C. § 1692e(8)). "An FDCPA violation occurs when a debt collector's representation or action is materially false or misleading and had the purpose of inducing payment by the debtor." *Snyder v. Finley & Co., L.P.A.*, 37 F.4th 384, 387 (6th Cir. 2022), reh'g denied, No. 21-3997, 2022 WL 3237461 (6th Cir. Aug. 5, 2022) (cleaned up) (citations omitted).

To establish a claim under the FDCPA, "(1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated '§ 1692e's prohibitions.'" *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (quoting *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009)); *see also White v. Universal Fid., LP*, 793 F. App'x 389, 391 (6th Cir. 2019) (same). In determining whether a debt collector's conduct runs afoul of the FDCPA, "[c]ourts must view any alleged violation through the lens of the 'least sophisticated consumer'—the usual objective legal standard in consumer protection cases." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 450 (6th Cir. 2014).

In this case, the parties do not dispute any of the first three elements of Powers's FDCPA claim. Indeed, Powers is clearly a consumer as defined by the statute, *see* [R. 1-3 (State Complaint), ¶ 3], the medical debt at issue arose out of transactions which were for personal purposes, *id.* at ¶ 70, and LRS is a debt collector as defined by the statute, *id.* at ¶ 9. The parties' dispute lies with the fourth element: whether LRS violated § 1692e's prohibitions.

In its summary judgment motion, LRS suggests that Powers's claim against it must fail as a matter of law for three reasons. First, LRS contends "a claim for violation of 15 U.S.C. § 1692e(8) for an alleged failure to note a debt is disputed can only be premised on an alleged failure to report a dispute in response to a 15 U.S.C. § 1692g(a) notice." [R. 46-1, p. 8]. Second, LRS attests that it never received notice of Powers's disputes of the five debts in question, and there is no evidence to indicate otherwise. *Id.* at 9. Third, LRS alternatively argues that even if it had received notice of Powers's dispute of the five debts in question, it had no affirmative duty to report those disputes because LRS had already reported the debts to credit reporting agencies prior

to Power's August 14, 2021 letter to Trans Union, and it was not required by law to update its report thereafter. *Id.* at 10.

In his response and cross-motion, Powers first offers a general overview of the FDCPA and its purpose, and notes that the FDCPA is a strict liability statute. [R. 48, pp. 4, 16]. Powers submits that LRS's alleged failure to report his disputed debts is a *per se* FDCPA violation that entitles him to summary judgment. *Id.* at 1. In addition, Powers, in response to LRS's argument concerning notice under 15 U.S.C. § 1692g, also contends that he properly disputed the seven medical debts in writing to Trans Union and verbally to LRS, and that the term "disputed debts" is to be construed as an ordinary person would understand it. *Id.* at 17–22. Lastly, Powers rejects LRS's argument that it was not required to update its previous report to reflect his disputes. *Id.* at 22.

The Court turns first to LRS's obligations under 15 U.S.C. § 1692e(8), over which the parties disagree in several respects. LRS contends it had no affirmative duty to update the information it previously furnished to Trans Union (or any credit reporting agency) after Powers's August 14, 2021, dispute letter to Trans Union, and there is considerable authority supporting that position. In *Wilhelm v. Credico, Inc.*, the Eighth Circuit Court of Appeals affirmed a district court's grant of summary judgment in a debt collector's favor and explained,  "§ 1692e(8) . . . is rooted in the basic fraud law principle that, if a debt collector *elects* to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." 519 F.3d 416, 418 (8th Cir. 2008) (emphasis in original). The Court expounded on its holding, noting that its "interpretation" of the statute is "confirmed by the relevant part of the Federal Trade Commission's December 1988 Staff Commentary on the Fair Debt Collection Practices Act," which provides, "Post-report dispute. When a debt collector

learns of a dispute *after* reporting the debt to a credit bureau, the dispute need not also be reported." *Id.* (citing FTC Staff Commentary, 53 Fed. Reg. 50097–02, 50106 (Dec. 13, 1988)) (add'l citations omitted) (emphasis in original); *see also Edeh v. Aargon Collection Agency, LLC*, 2011 WL 2963855, *4 (D. Minn. June 20, 2011) (citation omitted) ("[W]hen a debt collector learns that debt is disputed only after the collector has reported the debt to the credit reporting agencies, the collector has no affirmative obligation to report the dispute.").

While the Sixth Circuit Court of Appeals has not directly addressed this issue, it has acknowledged that "the Federal Trade Commission's Staff Commentary on the FDCPA is instructive." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012) (citing *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (6th Cir. 2011)). Moreover, district courts within this circuit have followed the Eighth Circuit's holding. *See Thomas v. CBC, LLC*, No. 3:20-CV-00699, 2021 WL 2590169, at *4 (M.D. Tenn. June 24, 2021) (citing *Wilhelm*, 519 F.3d at 418; FTC Staff Commentary, 53 Fed. Reg. 50097–02, 50106) (granting summary judgment for debt collector and explaining "the law is clear that [debt collector] did not actually have an affirmative obligation to report [a] dispute unless it communicated with the credit bureaus about the plaintiff's credit information *after* learning of the dispute") (emphasis added); *Phillips v. NCO Fin. Sys., Inc.*, No. 12-CV-15482, 2014 WL 1405217, at *7 (E.D. Mich. Apr. 11, 2014) (citing *Wilhelm*, 519 F.3d at 418; FTC Staff Commentary, 53 Fed. Reg. 50097–02, 50106) (granting summary judgment for debt collector that reported debts before plaintiff disputed them and explaining that a debt collector is not "obligated to notify a credit reporting agency that a debt is disputed, or to request that a trade line account be removed from a credit report, if the debt collector is unaware that the debt is disputed *when it first reports the debt* to a credit reporting agency") (emphasis added); *Ader v. Merchants & Med. Credit Corp., Inc.*, No. 1:16-CV-13961, 2018 WL 632044, at *2, n.2 (E.D.

Mich. Jan. 9, 2018), report and recommendation adopted, No. 16-CV-13961, 2018 WL 623650 (E.D. Mich. Jan. 30, 2018) (explaining that the FTC Staff Commentary "noted that when a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported, i.e., there is no post-report duty to update the information," and "[a] 'vast weight of authority' has confirmed there is no duty to update information after it is reported") (counting cases).

Here, the record clearly demonstrates that LRS was already reporting the seven medical debts at issue, with only two denoted as disputed, before Powers ran his credit report on May 17, 2021. *See* [R. 46-8 (May 17, 2021 Credit Report), pp. 2–9]. Even if LRS had received notice of Powers's August 14, 2021 letter from Trans Union, therefore, LRS would have been under no obligation to report Powers's disputes to credit reporting agencies, including Trans Union, *unless* it *elected* to update the information it previously furnished. *See* FTC Staff Commentary, 53 Fed. Reg. 50097–02, 50106; *Wilhelm*, 519 F.3d at 418; *Edeh*, 2011 WL 2963855, at *4; *Thomas*, 2021 WL 2590169, at *4; *Phillips*, 2014 WL 1405217, at *7; *Ader*, 2018 WL 632044, at *2. In his cross-motion, Powers appears to concede that LRS had no post-report duty to update the information it already reported. [R. 48, p. 22]. Powers suggests, however, that the evidence indicates LRS *did* elect to update its information on a monthly basis, and "[b]ecause it voluntarily chose to update the LRS Tradelines, §1692e(8) required LRS to report that Mr. Powers' had disputed each of the debts." [R. 48, p. 22]. And, indeed, Powers's May 17, 2021 credit report indicates LRS first reported the debts on May 7, 2021, and his September 25, 2021 credit report indicates that LRS provided updated information on Powers to Trans Union on September 17, 2021. [R. 48-1, pp. 11–14].

LRS does not dispute that it provided updated credit information on Powers to Trans Union. *See generally* [R. 50]. The Court notes, here, that it is not totally clear by looking at the credit report whether the September 17, 2021 "date updated" reflects when LRS provided updated credit information to Trans Union or when Trans Union itself updated its internal account information. However, in its response [R. 50], LRS does not refute Powers's contention that this date reflects when LRS provided information to Trans Union. "Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the *moving party's arguments*." *Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022) (emphasis in original); *see also Cunningham v. Tenn. Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013) ("It is well understood that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (cleaned up). For purposes of this analysis, the Court therefore presumes, consistent with Powers's undisputed representation, that the September 17, 2021, date reflects when LRS provided Powers's updated account information to Trans Union. And since, on this record, the evidence shows LRS elected to update the information it furnished to Trans Union, the issue then becomes whether LRS had prior notice that Powers disputed the other debts, either through Powers's August 14, 2021 dispute letter to Trans Union or otherwise.

Powers argues LRS received notice of all seven of his disputes through two separate means: (1) his August 14, 2021 letter to Trans Union, and (2) an oral dispute he made to an LRS representative on August 6, 2020. Again, LRS agrees that Powers properly disputed all seven Elizabethtown Emergency Physicians debts with Trans Union directly, which triggered Trans Union's duty under 15 U.S.C. § 1681i(a)(2) to provide notice of those disputes to LRS. [R. 46-1, p. 4]. LRS, however, denies ever receiving notice of the disputes from Trans Union. [R. 46-1, p.

9]; [R. 46-6, Ex. 5 (Affidavit of Cynthia Habeeb), ¶¶ 2, 10]. Acknowledging that he "has no direct proof" that Trans Union did in fact notify LRS of the disputes, Powers simply "assumes that Trans Union complied with its statutory duty." [R. 48, p. 12]. Powers suggests he has no reason to believe that Trans Union failed in its statutory duty to notify LRS, although the Court observes that Powers brought claims against Trans Union for FCRA violations for failing to notify him of the results of its investigation into his disputes.[2]

Drawing all reasonable inferences from the underlying facts in Powers's favor, *Matsushita Elec.*, 475 U.S. at 587; *Lindsay*, 578 F.3d at 414, there is simply no evidence upon which a jury could reasonably rely to find that LRS received notice from Trans Union that Powers had disputed the debts at issue in his August 14, 2021, letter. Again, Powers concedes that he "has no direct

---

[2] Powers brought claims against Trans Union for other violations of its statutory duties under the Fair Credit Reporting Act ("FCRA"):

> 100. Mr. Powers sent a written dispute letter to Trans Union on August 14, 2021 by certified mail. His letter disputed false and inaccurate information on his credit reports. Trans Union failed to respond to Mr. Powers' August 14, 2021 dispute letter.
>
> 101. Receipt of Mr. Powers' dispute letter triggered Trans Union's duty under 15 U.S.C. § 1681i(a) to send prompt notice of Mr. Powers' disputes to the furnishers of the disputed information outlined in the dispute letters, to conduct its own reasonable investigation of Mr. Powers' disputes, and to send Mr. Powers prompt notice of the results of its investigations of Mr. Powers' disputes. While Trans Union did send copies of Mr. Powers' dispute letters to the furnishers of disputed credit information outlined in the August 14, 2021 dispute letter, Trans - Union failed to send Mr. Powers notice of the results of the investigations into any of Mr. Powers' disputes.
>
> 102. Because Trans Union breached its statutory duty to send Mr. Powers the results of its and the furnishers of disputed credit information's investigation of Mr. Powers' disputes, Mr. Powers had to take time out of his day to acquire copies of his credit reports. Because he is not very computer savvy, Mr. Powers had to drive to a third-party location to get assistance in obtaining his credit reports.
>
> 103. Trans Union failed to meet its statutory obligations under the FCRA. Trans Union failed to send Mr. Powers timely notice of the results of Trans Union's and the furnishers' investigations of his disputes.
>
> 104. Trans Union and Trans Union violated the FCRA by failing to send Mr. Powers the results of its and the furnishers of disputed information's investigations of Mr. Powers' disputes.

[R. 1-3 (State Complaint), ¶¶ 100–104].

- 11 -

proof" that Trans Union provided any such notice to LRS. [R. 48, p. 12]. To be sure, the record is completely devoid of any evidence to support Powers's contention. "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones v. Mays*, No. 3:19-00795, 2022 WL 1721043, at *3 (M.D. Tenn. May 27, 2022), report and recommendation adopted, No. 3:19-CV-00795, 2022 WL 3652949 (M.D. Tenn. Aug. 24, 2022) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Instead, "Plaintiff must present affirmative and probative evidence in support of his [] claims showing that there is a sufficient evidentiary basis for a reasonable trier of fact to find in his favor." *Id.* (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). LRS, in contrast, has submitted a log of Powers's account history and an affidavit from its CEO attesting that it never received notice of Powers's letter from Trans Union. [R. 46-5, Ex. 4 (Powers's LRS Account History), pp. 1–15]; [R. 46-6, Ex. 5 (Affidavit of Cynthia Habeeb), ¶¶ 2, 10]. As stated, a "genuine" issue of material fact exists if "there is *sufficient evidence* favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249 (emphasis added). On this record, there is a complete lack of evidence to suggest LRS ever received notice of Powers's dispute from Trans Union (a fact which Powers himself admits).

In sum, Powers's theory of liability against LRS surrounding his August 14, 2021 dispute letter to Trans Union fails because LRS was only obligated to report his disputes if it both (1) received notice of the disputes and (2) subsequently elected to update the information it previously reported to credit reporting agencies. Because there is no evidence Trans Union ever sent notice of Powers's letter to LRS, or that LRS ever received any such notice, no reasonable jury could find that LRS violated the FDCPA by failing to report the disputes contained in the letter.

Notwithstanding, Powers offers that, although there is no evidence to indicate LRS received notice of his disputes from Trans Union, "such proof is not necessary" because he believes LRS's collection history conclusively demonstrates that he orally disputed all seven debts from Elizabethtown Emergency Physicians directly to LRS. [R. 48, pp. 12–13]. The entry Powers points to is dated August 6, 2020, and states,

> D called in did MM verified info said no money no job no unemployment, advsd of new act and acts in legal D says never rcvd a legal letter advsd was sent to address he verified in Jan 2020 and no return mail D said well I dont owe that money and my highest bill with them is $29.00 and I advsd no and this is mult DOS D started to get rude and raise voice[.]

[R. 48-2, Ex. B (Powers's LRS Account History), p. 13]. In other words, Powers offers this entry as proof he orally disputed all seven medical debts directly to LRS in June of 2020, before Powers ran his credit report on May 17, 2021. This entry, Powers suggests, entitles him to summary judgment, because he believes it demonstrates clear notice that the debts were disputed, making LRS's failure to report them a *per se* FDCPA violation. Attempting to cast doubt on the materiality of this entry, LRS suggests if Powers "believed that he had disputed all other accounts as being 'not his' four months earlier, there would have been no reason for him to dispute just a single account on December 16, 2020." [R. 50, p. 5].

The Court first observes that Powers's oral dispute to LRS directly, assuming it occurred as Powers alleges, would trigger LRS's duty under Section 1692e(8) to report the dispute when reporting the debts or updating prior reports of the debts. *See Jerman v. Carlisle*, 464 F. Supp. 2d 720, 724 (N.D. Ohio 2006) (quoting *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005)) ("'Oral dispute of a debt precludes the debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute.'"). The Sixth Circuit has recognized that "[i]f consumers contest a debt orally," as opposed to in writing, "they

may still dispute the debt," they simply "do not invoke their rights under Sections 1692g(a)(4), (a)(5), and (b)," which require a debt collector "to verify the debt and to cease all collection efforts." *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 757–58; 758, n.7 (6th Cir. 2018) (abrogated on other grounds); *see also Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("Debtors can protect certain basic rights through an oral dispute, but can trigger a broader set of rights by disputing a debt in writing."). In light of this authority, the Court rejects LRS's contention that, in order to validly dispute his debts, Powers was required to notify LRS in writing pursuant to 15 U.S.C. § 1692g(a). [R. 46-1, p. 8].

To support its position, LRS relies on *Lupo v. JPMorgan Chase Bank, N.A.*, 2016 WL 3459855 (D. Md. June 24, 2016). There, a district court in Maryland, in considering a possible Section 1692e(8) violation, opined that "the term 'disputed debts' is a term of art under the FDCPA that applies when a 'consumer notifies the debt collector in writing within the thirty-day period described in § 1692g(a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor.'" *Id.* at *11 (citing 15 U.S.C. § 1692g(b)) (cleaned up). The court went on to clarify that "[t]he 30-day period referenced in the statute commences when the debt collector provides the consumer with a written notice of the debt." *Id.* Ultimately, the court concluded that "[n]othing in the record supports Plaintiff's claim that [the defendant debt collector] communicated credit information without acknowledging that Plaintiff had disputed the debt" because the debt collector reported the debt *after* the thirty-day notice period had lapsed and *before* the plaintiff sent a letter disputing the debt. *Id.*

This Court finds that *Lupo* is not instructive on this issue for several reasons. First, and most obviously, this Court is bound by subsequent, clear authority from the Sixth Circuit Court of Appeals holding that a consumer may validly dispute a debt orally. *See Macy*, 897 F.3d at 757–

58; 758, n.7. Second, the Court is not convinced that the facts of *Lupo*, or the court's reasoning, support LRS's position here. To be sure, the *Lupo* court did not hinge its holding on the fact that the plaintiff's dispute was written; rather, it explained that the plaintiff's dispute letter was deficient because it was submitted "long after the 30-day statutory window for disputing the debt's validity" and "merely inform[ed] the debt collector that he intend[ed] to commence legal proceedings." *Id.*

Moreover, *Lupo*, at its core, dealt with a Section 1692g(a) debt validation notice and the plaintiff's failure to timely respond thereto. But Section 1692g(a)'s more stringent notice requirements cannot be conflated with those of Section 1692e(8). In *Brady v. Credit Recovery Co.*, the First Circuit Court of Appeals aptly distinguished between the two:

> Under section 1692g(b) a consumer must dispute a debt in writing, within an initial thirty-day period, in order to trigger a debt validation process. *See* 15 U.S.C. § 1692g(b). Once a consumer exercises this right, a debt collector must cease all further debt collection activity until it complies with various verification obligations. *See id.* Section 1692g(b) thus confers on consumers the ultimate power vis-a-vis debt collectors: the power to demand the cessation of all collection activities. *See id.* Recognizing the broad consumer power granted by this provision, Congress expressly conditioned its exercise on the submission of written notification within a limited thirty-day window. *See id.*

> In contrast, § 1692e(8) does not affect debt collection practices at all. *See* 15 U.S.C. § 1692e(8). Instead, § 1692e(8) merely requires a debt collector who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history. *See id.* Given the much more limited effect of this provision, Congress's decision not to condition its exercise on the submission of written notification makes logical sense.

160 F.3d 64, 67 (1st Cir. 1998). Other district courts within the Sixth Circuit have adopted the First Circuit's conclusion. *See, e.g.*, *Mellinger v. Midwestern Audit Serv., Inc.*, No. 11-CV-11326, 2012 WL 405008, at *4 (E.D. Mich. Feb. 8, 2012) (finding *Brady*'s reasoning persuasive "especially because the very section at issue requires that the debt collector's first notice of debt inform the consumer they have certain rights which must be pursued in writing, while not specifying that the

dispute of a debt must likewise be in writing"); *Smith v. Nationwide Collection Agencies, Inc.*, No. 17-12493, 2019 WL 670092, at *2 (E.D. Mich. Feb. 19, 2019) (citing *Brady* and noting "[t]here are many different ways in which a consumer can notify a debt collector that the consumer is disputing a debt"). All this to say, the Court is more persuaded by the First Circuit's reasoning and those of district courts which have followed it than it is by *Lupo*. And, again, the Court is guided by the Sixth Circuit's clear directive that "[i]f consumers contest a debt orally, *they may still dispute the debt*," they simply "do not invoke their rights under Sections 1692g(a)(4), (a)(5), and (b)[.]" *Macy*, 897 F.3d at 757–58; 758, n.7 (emphasis added).

Having determined that Powers *could* have properly disputed his debts orally under the law, the Court turns to the parties' disagreement over whether the evidence conclusively demonstrates that Powers did so. "The FDCPA does not define 'disputed debt' or explain what is required to 'dispute[]' a debt so as to trigger obligations to report the debt as disputed under § 1692e(8)" and "[n]o U.S. Courts of Appeals have done so either." *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537, at *23 (N.D. Ill. Mar. 30, 2017). In this case, the current record demonstrates that the parties' disagreement over Powers's alleged oral dispute presents a material factual issue a jury must resolve. Powers believes his statement to an LRS representative during the August 6, 2020, "well I dont owe that money and my highest bill with them is $29.00" establishes, as a matter of law, that he orally disputed all seven Elizabethtown Emergency Physicians debts such that its duties under Section 1692e(8) were triggered. [R. 48, p. 13]. The LRS's representative's notes from the August 6, 2020 phone call are, however, less clear than Powers contends, and LRS offers a reasonable interpretation of Powers's account history on the whole. *See* [R. 50, pp. 4–5] ("[E]ven if the entry were material, it is not appropriate to pull it out of context, as the Plaintiff has done here. Four months after the conversation summarized in this

August 6, 2020 entry, on December 16, 2020, the Plaintiff disputed a single account as being 'not his.' Had he believed that he had disputed all other accounts as being 'not his' four months earlier, there would have been no reason for him to dispute just a single account on December 16, 2020.").

For his part, Powers relies on several cases outside the Sixth Circuit for support. First, he cites *Tejero v. Portfolio Recovery Associates, L.L.C.*, in which the Fifth Circuit Court of Appeals offered, "The Seventh Circuit, and every district court within it to have considered the matter, has concluded that the phrase 'the amount reported is not accurate' unambiguously and clearly 'dispute[s]' a debt—'[t]here is simply no other way to interpret this language.'" 955 F.3d 453, 461 (5th Cir. 2020). But the facts of *Tejero* are distinguishable from those here. First, the court was considering the clarity of the written dispute letter in question to determine whether the attorneys who drafted it could properly be subject to sanctions. *Id.* The relevant portion of the letter read, "My monthly expenses exceed my monthly income . . . and the amount you are reporting is not accurate either." *Id.* The court went on to explain, "Aside from invoking the word 'dispute,' we struggle to see how a debtor could dispute a debt more clearly than by writing, 'the amount you are reporting is not accurate.'" *Id.* Here, in contrast, the language of Powers's alleged oral dispute is less clear. According to LRS's account log, Powers did not state anything to the effect of "the amount you are reporting is not accurate"; instead, the notes in Powers's LRS account log indicate that he advised, "I dont owe that money and my highest bill with them is $29.00." [R. 48-2, Ex. B (Powers's LRS Account History), p. 13]. It is unclear by the notes what exactly Powers was referring to by "that money," and a reasonable jury could interpret his statement as referring to only some of the debt or to all of it.

Powers also cites *Dixon v. RJM Acquisitions, LLC*, 640 F. App'x 793 (10th Cir. 2016). In doing so, Powers acknowledges that the Tenth Circuit Court of Appeals reversed a district court's

grant of summary judgment in favor of a debt collector, but the Tenth Circuit did *not* conclude that summary judgment would have instead been appropriate for the debtor-plaintiff. Indeed, the Tenth Circuit explained,

> When we view the evidence in the light most favorable to the debtor, as required, we believe she has created a genuine fact issue on whether the debt was disputed. In the recorded conversation, she said:
>
> - "I don't agree that I owe that much, that's too much,"
> - "I don't owe that much," and
> - "I feel that all I owe is $20."
>
> A reasonable fact finder could treat these statements as a dispute of the debt. For example, the debt collector's training materials give examples of ways that debtors dispute debts. . . . These examples include one of the debtor's statements here: "'I don't owe that much.'" [] And after the telephone call, the debt collector wrote a note stating that the debtor had said "she doesn't feel she owes $102."

*Id.* at 795 (cleaned up). Again, however, in reversing the district court's summary judgment ruling for the debt collector, the Tenth Circuit did not find that judgment would instead be appropriate for the debtor-plaintiff. As previously stated, and consistent with *Dixon*, this Court agrees that a genuine issue of fact over the August 6, 2020 phone call exists such that, when reviewing the evidence in the light most favorable to Powers, summary judgment for LRS is inappropriate. However, contrary to Powers's position, when viewing the evidence in the light most favorable to LRS, this factual dispute likewise renders summary judgment in favor of Powers inappropriate.

Lastly, Powers cites *Eul v. Transworld Systems*, No. 15-C-7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017), which he suggests stands for the proposition that "Statements such as 'I don't owe that balance' and 'I don't owe that much' are also sufficient [to trigger a dispute within the meaning of § 1692e(8)]." [R. 48, p. 21]. Powers, however, misquotes the *Eul* court, inserting brackets to frame its holding more favorably. Instead, the *Eul* court, in considering a motion to dismiss, observed that "[m]ultiple courts in this District have held, for example, that the statement

'the amount reported is not accurate' is sufficient to *plausibly allege* a dispute within the meaning of § 1692e(8)." *Eul*, 2017 WL 1178537, at *23 (emphasis added) (counting cases). The court continued, "Statements such as 'I don't owe that balance' and 'I don't owe that much' are also sufficient" to state a claim for relief under the FDCPA and survive Rule 12(b)(6) dismissal. *Id.* (citations omitted). Even so, after analyzing other relevant case law, the *Eul* court still determined that those "decisions helpfully illustrate what is sufficient to dispute a debt, but they do not clarify what is necessary to do so because none of them found a purported 'dispute' insufficient," and even recognized that there is an "absence of clear law on what is necessary to 'dispute' a debt" for purposes of Section 1692e(8). *Id.* This decision, again, does not support Powers's argument for summary judgment and, in fact, highlights the fact intensive nature of determining, on a case-by-case basis, what constitutes a "dispute."

As stated, when deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587; *Lindsay*, 578 F.3d at 414. The same standards apply when parties file cross-motions for summary judgment, *Craig*, 823 F.3d at 387 (citation omitted), and "the Court evaluates each party's motion on its own merits, drawing all reasonable inferences against the party whose motion is under consideration." *Id.* Drawing all reasonable inferences in LRS's favor, the Court finds that a reasonable jury could find in its favor on this issue. Indeed, the only evidence of Powers's oral dispute of the Elizabethtown Emergency Physicians medical debts is the LRS representative's brief, ambiguous log of the phone call, in which the representative recounts Powers explaining he has "no money no job no unemployment" and advising he never received a "legal letter" before stating, "I dont owe that money and my highest bill with them is $29.00" and "get[ting] rude and rais[ing his] voice" when the representative refuted him. [R. 48-

2, Ex. B (Powers's LRS Account History), p. 13]. On this evidence, a factfinder, not this Court, must determine whether Powers disputed his debts during the August 6, 2020 call with LRS. If so, LRS was required to report the disputes any time it reported the debts to credit reporting agencies thereafter, and failure to do so would violate the FDCPA.

## IV.    CONCLUSION

For all these reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendant Louisville Recovery Service, LLC's Motion for Summary Judgment [**R. 46**] is **DENIED**.

2.    Plaintiff Michael Glen Powers, III's Cross-Motion for Summary Judgment [**R. 48**] is **DENIED**.

3.    This mater is **REFERRED** to Magistrate Judge Colin H. Lindsay to hold a status conference within **forty-five (45) days** of entry of this order to discuss next steps, including whether the parties would like to participate in a settlement conference or informal, ex parte settlement discussions, or if they are prepared to proceed to trial.

This the 16th day of February, 2024.

*Claria Horn Boom*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Cc: Counsel of Record